## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEITH ARRICK, SR.,**

      **Plaintiff,**

**v.**                                     **Civil Action No. 1:17cv131**
                                             **(Judge Kleeh)**

**FEDERAL BUREAU OF PRISONS;**
**C.O. JENNIFER THAYER (f.k.a.**
**JENNIFER KIMBLE); C.O. HELEN**
**HANDLIN; UNITED STATES OF**
**AMERICA; C.O. BUCHANAN; C.O.**
**KNOTTS, and UNKNOWN**
**CORRECTIONS OFFICERS,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. <u>Background</u>

The *pro se* Plaintiff, an inmate at FCI Hazelton in Bruceton Mills, West Virginia,  initiated this action on July 31, 2017, by filing a combined Federal Tort Claim Act ("FTCA") and <u>Bivens</u> complaint. ECF No. 1. Pursuant to a Notice of Deficient Pleading, on August 14, 2017, Plaintiff filed his FTCA complaint and a <u>Bivens</u> complaint on court-approved forms, a motion to proceed *in forma pauperis* ("IFP"), and supporting documents. ECF Nos. 5, 6, 7, 8, 9.  By Order entered August 22, 2017, Plaintiff was granted permission to proceed IFP but was directed to pay an initial partial filing fee ("IPFF"). ECF No. 10. Plaintiff paid the requisite fee on September 14, 2017. ECF No. 12. On October 2, 2017, Plaintiff filed a motion to appoint counsel and an expert. ECF No. 13. By Order entered February 7, 2018, Plaintiff's motion for counsel and an expert was denied. ECF No. 18. By Order entered April 4, 2018, Plaintiff was advised of the potential consequences of pursuing both a FTCA and <u>Bivens</u> action.  ECF No. 20. On April 16, 2018, Plaintiff elected to proceed only with the <u>Bivens</u> action. ECF No. 22.   On July 23, 2018, Plaintiff filed a motion to amend.  ECF

23.  By Order entered August 2, 2018, Plaintiff's motion to amend was granted.  ECF No. 24.  Plaintiff filed his amended <u>Bivens</u> complaint on August 23, 2018. ECF No. 26.

On September 6, 2018, the undersigned conducted a preliminary review of this matter, determined that summary dismissal was not appropriate, and entered an Order to Answer, directing that sixty-day summonses be issued for service upon the named defendants by the U.S. Marshal; Plaintiff was given an additional thirty days in which to identify the John/Jane Doe defendant "Unknown Corrections Officers." ECF No. 27. On September 17, 2018, Plaintiff filed a response, identifying Defendant T. Knox as one of the John Doe "Unknown Corrections Officers." ECF No. 33.  By Order entered September 18, 2018, the Clerk was directed to correct the docket to reflect Plaintiff's identification of Defendant T. Knox and issue a summons for him.  ECF No. 34. On November 3, 2018, the Defendants moved for a consolidated response date and reissuance of summons for several incorrectly-identified defendants. ECF No. 37.  By Order entered November 14, 2018, Defendants' motion was granted and the Clerk was directed to clarify the docket with the correct names of those defendants and to reissue summonses for them in their corrected names. ECF No. 38.   By Case Management Order entered November 30, 2018, this case was reassigned from Senior District Judge Irene M. Keeley to District Judge Thomas S. Kleeh.  ECF No. 41.

On February 20, 2018, the defendants moved for an extension of time. ECF No. 48.  By Order entered February 21, 2019, the extension was granted.  ECF No. 49. On March 26, 2019, the defendants moved for a second extension of time. ECF No. 51. By Order entered March 27, 2019, the second extension was granted. ECF No. 52.  On April 29, 2019, Plaintiff filed a copy of his First Request for Production of Documents ("RPOD") and a certificate of service, evincing service of the same upon the defendants.  ECF No. 54. Plaintiff also filed another motion for appointment of counsel the same day. ECF No. 55.  By separate Orders entered April 30, 2019, Plaintiff's first RPOD were struck as premature

and discovery was stayed and Plaintiff's second motion for appointed counsel was denied. ECF Nos. 56, 57. On May 3, 2019, the Defendants filed a Motion to Dismiss or Alternatively, Motion for Summary Judgment with a memorandum in support, attaching a sworn affidavit and an exhibit. Because Plaintiff was proceeding *pro se*, on May 6, 2019, a <u>Roseboro</u> Notice was issued, advising Plaintiff of his right to file a response to the defendants' dispositive motion.  ECF No. 60.  On May 28, 2019, Plaintiff moved for an extension of time. ECF No. 65.  On June 3, 2019, Plaintiff moved for a further extension of time.  ECF No. 66.  By Order entered June 4, 2019, Plaintiff's motions for extensions were granted. ECF No. 67.  On June 24, 2019, Plaintiff moved for a third extension of time. ECF No. 69.  By Order entered June 25, 2019, Plaintiff was granted a third extension. ECF No. 70. On June 28, 2019, Plaintiff filed a letter motion for a fourth extension of time. ECF No. 71. By Order entered July 1, 2019, Plaintiff was granted the fourth extension. ECF No. 72.

On July 2, 2019, Plaintiff filed a response and objections to the defendants' dispositive motion. ECF No. 73.  By Order entered July 24, 2019, the Clerk of Court was directed to seal Plaintiff's response for exceeding the page limits prescribed by the Local Rules of Prisoner Litigation Procedure ("LR PL P") and Plaintiff was directed to refile  his response in compliance with the LR PL P within twenty-one days. ECF No. 76. On August 12, 2019, Plaintiff filed a response, or in the alternative, motion for guidance on how to comply with the court's July 24, 2019 order. ECF No. 78.  By Order entered August 27, 2019, the Clerk was directed to send Plaintiff a copy of his July 2, 2019 response. ECF No. 79. On September 6, 2019, Plaintiff moved for another extension of time. ECF No. 81. By Order entered October 16, 2019, Plaintiff was granted the extension of time to refile his <u>Roseboro</u> response in compliance with the LR PL P and Plaintiff's August 12, 2019 alternative motion for guidance on how to comply with the court's July 24, 2019 order was terminated. ECF No. 82.  On October 17, 2019, Plaintiff moved for a further extension of time. ECF No. 83.  On October 18, 2019, Plaintiff filed a

supplement to his motion for an extension of time. ECF No. 84. By Order entered October 21, 2019, Plaintiff's October 17, 2019 motion for another extension was denied as moot. ECF No. 85. On November 14, 2019, Plaintiff filed his response and objections to the defendants' dispositive motion. ECF No. 88.  On November 29, 2019, the defendants filed a reply. ECF No. 89. On December 9, 2019, Plaintiff filed a motion seeking a 30-day extension of time in which to respond to the Defendants' reply. ECF No. 90.

Accordingly, this case is before the undersigned for R&R pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

## II. The Pleadings

### A. The Complaint

In the amended Bivens complaint, the Plaintiff raises Eighth Amendment violations arising out of claims of failure to protect, deliberate indifference, racial and other discrimination, loss of personal property, denial of visitors, and denial of the opportunity for employment. He also raises a claim regarding the Defendants' failure to abide by Bureau of Prisons ("BOP") policy under the "Accardi Doctrine."[1]

More specifically, Plaintiff contends that on July 16, 2016, he was sent to the Special Housing Unit ("SHU") for a minor infraction, and while he was away, Corrections Officer ("CO") Jennifer Thayer[2] ("Thayer") loudly announced to the other inmates in the area that Plaintiff was a "CHO-MO," a derogatory prison term for those convicted of sex offenses, and left the area, leaving his cell unsecured, deliberately inviting other inmates in to steal his personal property. ECF No. 26-1 at 1 – 2.  Plaintiff

---

[1] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

[2] Plaintiff  originally identified C.O. Thayer as "C.O. J. Kimble" in his amended complaint, but in their Motion for Consolidated Response Date and Reissuance of Summons," Defendants requested that the docket be clarified, inter alia, by correcting the name of Kimble to "Jennifer Thayer" and reissuing a corrected summons to her in her true name. See ECF No. 37.

contends that Thayer later returned and witnessed "five to six inmates" exiting his cell with his personal property; all of his personal property was taken. ECF No. 26-1 at 1 – 3. Thayer then entered Plaintiff's cell with two inmates, and those inmates left the cell with more of Plaintiff's property. Id. at 2. Plaintiff avers that several inmates have provided affidavits to support this claim, stating that they are attached as exhibits.[3] Id. at 2. Plaintiff claims that an inmate by the name of Kezerle provided an affidavit saying this, identifying the property, and stating his belief that some of Plaintiff's property was later sold on the yard. Id. at 2 – 3.  A second prisoner witness, "Rutherford," allegedly provided an affidavit stating stated that Thayer unsecured Plaintiff's locker when she announced to the others that he was a "CHO-MO."[4] Id. at 3.  Plaintiff contends that being exposed as a sex offender put his safety in "serious jeopardy," caused him serious harm from other inmates, and constitutes failure to protect and deliberate indifference. Id. at 5.

Subsequently, on August 10, 2016, Plaintiff applied for a job in the prison's laundry and was refused employment by C.O. Helen Handlin,[5] who told him that neither he nor any other sex offenders would ever work there as long as she did. Id. at 5 – 6.

Plaintiff also alleges that on an unspecified date, one of his visitors was denied entry by staff, because BOP Program Statement ("P.S.") 5267.09 states that an inmate must have known the proposed visitor prior to incarceration. Id. at 6. Plaintiff contends that this is "cruel and unusual punishment" and it should be stricken from the P.S. Id.

---

[3] Plaintiff failed to attach the same to his amended complaint.

[4] This affidavit also was not attached to the amended complaint.

[5] Plaintiff  originally identified C.O. Handlin as "C.O. Hanlen" in his amended complaint, but in their Motion for Consolidated Response Date and Reissuance of Summons," Defendants requested that the docket be clarified, *inter alia*, by correcting the name of Hanlen to "Helen Handlin" and reissuing a corrected summons to her in her true name. See ECF No. 37.

Plaintiff also alleges that staff denied another of his visitors entry based on a failed "Ion Spectrometry Scan"[6] performed by unknown BOP officers working visitation; he alleges that the BOP does not comply with the "extensive requirements" for routine maintenance of the Ion Spectrometry Scanner, and that this failure constitutes a violation of the Accardi Doctrine, and the Defendants are liable for damages for their failure to follow policy. Id. at 6 – 7; see also ECF No. 1 at 8.

Finally, Plaintiff alleges that on June 30, 2017, Officer Buchanan used a racially-charged epithet when referring to him, evincing deliberate indifference.  ECF No. 26-1 at 7.

Plaintiff asserts that he has lost personal property; suffers from unspecified physical and psychological injuries from C.O. Thayer' actions; and has been denied the opportunity for employment. ECF No. 26 at 9.

The Plaintiff simultaneously maintains that he has both exhausted his administrative remedies with regard to his claims [ECF No. 26 at 5; ECF No. 26-1 at 4] and that he could not raise some of his claims previously, because they were not exhausted at the time he filed his original complaint. ECF No. 26-1 at 8.

For relief, Plaintiff requests unspecified monetary damages.[7] ECF No. 26 at 9.

## B. Defendants Motion to Dismiss, or Alternatively, Motion for Summary Judgment

In response to the amended Bivens complaint, Defendants contend that the complaint should be dismissed or summary judgment granted in their favor, because Plaintiff failed to exhaust his administrative remedies against Correctional Officer Helen Handlin ("C.O. Handlin") for improperly denying him employment in the laundry based on his status as a sex offender. ECF No. 59 at 1 – 2.

---

[6] The ion spectrometry device program is a minimally intrusive method utilizing gas chromatography and mass spectrometry for screening people, their belongings, mail, and packages for the presence of illegal substances. See BOP P.S. P5520.01.

[7] In Plaintiff's response in opposition, he notes that "all named defendants are sued for $350,000.00 each." ECF No. 88 at 21.

Further, Plaintiff's claim against C.O. Handlin for a denial of a prison job must also fail because such a denial does not violate the Eighth or Fifth Amendment; prisoners do not have a protected interest in continued employment. Id. at 13 – 14. They further contend that Plaintiff's amended complaint should be dismissed as to the remainder of his claims against the Defendants, because Plaintiff fails to allege a cognizable claim for relief against any of them.  Id. at 2. They argue that Plaintiff's claim of unspecified physical and mental injuries do not rise to the level necessary for a cognizable Bivens claim, because such injuries must be more than *de minimis,* and because Plaintiff has alleged no altercation or accident occurred, his claim of physical injury, without more detail, must be considered *de minimis*.  Id. at 12.

Finally, they aver that Plaintiff's claims against the United States and the BOP must be dismissed because neither is a proper defendant; Bivens claims can only be alleged against individuals. Id. at 17. Defendants attach a sworn affidavit and another exhibit to their dispositive motion. ECF No. 59-1.

**C. Plaintiff's Response in Opposition**

Plaintiff reiterates his arguments and attempts to refute the Defendants' on the same.  Plaintiff raises several new claims not previously raised, and attaches numerous exhibits, copies of affidavits, copies of court rules, case law, and a copy of the Defendants' dispositive motion.

**D. Defendants' Reply**

Defendants reiterate their argument that Plaintiff's claims should be dismissed because  he failed to exhaust the claim against C.O. Handlin regarding her alleged improper denial of a job in the prison laundry on the basis of his status as a sex offender. ECF No. 89 at 1.  The two documents Plaintiff attached to his response do not support Plaintiff's contention that he exhausted this claim. The first document (ECF No. 88-2 at 434) is an informal remedy request that Plaintiff admits was not filed. Id. at 2.  The second, (ECF No. 88-2 at 435) is a copy of administrative remedy # 880419-R1, which was rejected because it was "not sensitive" and should have been submitted at the institution level." Id.

7

# III. Standard of Review

## A. Motion to Dismiss - Fed.R.Civ.P. 12(b)(1)

In ruling on a motion to dismiss under Rule 12(b)(1), no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  See Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996). Instead, the burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action.  See Fed.R.Civ.P. 12(h)(3).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir.

8

1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

## B. **Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citations omitted), to one that is "plausible on its face," [id. at 570], rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324

F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002);

Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a

"plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that

a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for

failure to state a claim. Id.

## B. **Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the

evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its

inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing

the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.

Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent

must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita,

475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine

issue for trial.  Id. This means that the "party opposing a properly supported motion for summary

judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. Improper Defendants

This action is being analyzed pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). However, a Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F. 3d 1204 (10th Cir. 2003). Accordingly, the Federal Bureau of Prisons is not a proper defendant, and it must be dismissed from this action.

Likewise, Plaintiff's attempt to include the United States of America as a defendant in this Bivens action fails. Bivens actions cannot lie directly against the United States, because the Constitution does not waive the federal government's sovereign immunity in a suit for damages. See Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97, 104 - 05 n.9 (2nd Cir. 1981); Leonhard v. United States, 633 F.2d 599, 618 n. 27 (2nd Cir.1980). See also 28 U.S.C. § 1346(b) (1976). Further, only individual persons can be subject to Bivens liability. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001); F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994). Indeed, a Bivens claim is brought against an individual for *his or her own acts*. Ziglar v. Abbasi, 137 S. Ct. 1843, 1860 (2017)(emphasis added); see also Carlson v. Green, 446 U.S. 14, 18 - 21 (1980). Accordingly, because the United States cannot be a Bivens defendant, it must be dismissed from this action.

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 (PLRA), as amended, prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. §1997e(a). In Jones v. Bock, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).[8] Further, the Court has held that "proper exhaustion" is required, meaning that the inmate must follow the prison's administrative rules as required, including when and how to file the complaint. See Woodford v. Ngo, 548 U.S. 81 (2006). Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. 2005).

In Woodford, the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford, 548 at 93 – 94. Therefore, "the PLRA exhaustion requirement requires *proper* exhaustion." Id. at 93 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 90 – 91.

---

[8] A district court may also raise the affirmative defense of exhaustion *sua sponte*, so long as the Plaintiff is given an opportunity to respond. See Anderson v. XYZ Corr. Health Svcs., Inc., 407 F.3d 674 (4th Cir. 2005).

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth v. Churner, 532 U.S. 731, 741, n.6 (2001), several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats  or intimidation to render administrative remedies unavailable, they must typically be substantial  and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v.

Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017) (quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director ("RD") signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP's record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process.

Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files at the same level, the suffix would be "F2."

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint. If the inmate is not given an opportunity to fix his complaint he may appeal to the next level. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels.

One exception to the standard grievance procedure is a complaint involving "sensitive" issues. If an inmate reasonably believes the issue he has is "sensitive" and that "the inmate's safety or wellbeing would be placed in danger if the request became known at the institution," he may submit his initial complaint to the RD. See 28 C.F.R. § 542.14(d)(1). The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. Id. This bypasses the informal resolution and institutional levels, and the Regional Administrative Remedy Coordinator will determine whether the request actually qualifies as "sensitive." Id. If it does not, the complaint will be rejected and returned to the inmate with instructions to file at the institutional level. Id. The inmate may then pursue the matter by submitting an Administrative Remedy Request locally to the Warden. Id. The Warden shall allow a reasonable extension of time for such a resubmission. Id.

The Plaintiff is currently serving a 162-month term of imprisonment that was imposed by the United States District Court for the Southern District of Ohio on June 9, 2015, after Plaintiff pled guilty

to sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a), (b), and 18 U.S.C. § 2.[9] He was committed to the custody of the BOP and designated to FCI Hazelton.

Defendants aver that while Plaintiff filed a total of twenty-one administrative remedies during his designation to the BOP, exhausted his administrative remedies for his other claims, they raise the affirmative defense that he failed to exhaust his claim that C.O. Handlin improperly denied him employment in FCI Hazelton's laundry based on his status as a sex offender. Id. at 4, 6, 8; see also Declaration of Howard Williams, Legal Assistant at Mid-Atlantic Regional office of the BOP ("Williams Decl."), ECF No. 59-1, ¶ 3 – 4 at 3. Attached to Williams' Declaration is a copy of Plaintiff's Administrative Remedy Generalized Retrieval summary. ECF No. 59-1 at 6 – 7.

With his response in opposition, relying on Ross v. Blake, Plaintiff contends that the Defendants "engaged in '[m]achination' regarding the Administrative Remedy Program" and that therefore, they are not entitled to summary judgment. ECF No. 88 at 3.  He argues that he did in fact exhaust that claim. Id. at 14. He contends that he filed a BP-8, which was given back by an unspecified defendant, who told him he needed to file a "Sensitive BP-9." Id. at 15. He did so, but the "Sensitive BP-9" was rejected because he had not first filed the BP-8 that the unspecified Defendant told him not to file.  Id. He avers that next, he took the issue to the Regional Office, where it was rejected, with instructions to start over with a BP-8 from his unit team, but by then, his unit team claimed to have lost the original BP-8, and they then reissued him a BP-8, "only to tell me that they had now . . . [decided] that I was time barred from filing[.]." Id. In support of this, he provides a sworn affidavit regarding the steps he took attempting to exhaust this claim, now identifying his correctional counselor "Mrs. Barcase" ("Barcase") as the one who refused to file his first BP-8 and told him he needed to file a "sensitive" BP-9. See ECF No. 88-2 at 3. Plaintiff contends that Barcase promised to keep the original BP-8 on file in case the "sensitive"

---

[9] See United States v. Arrick, S.D. Oh. Case No. 2:14cr108, available on PACER.

BP-9 was rejected. Id. Plaintiff avers that per Barcase's instruction, he filed his "sensitive" BP-9 to the warden, on October 21, 2016. Id. On October 25, 2016, the "sensitive" BP-9 was rejected and Barcase told him to file it "in the Region [sic]" as a BP-10. Id. On December 7, 2016, the Regional Office rejected it; Plaintiff notes that this is the Remedy ID # 880419-R1 mentioned in the sworn affidavit by Howard Williams attached to the Defendants' memorandum in support. Id. Plaintiff contends that "Region" told him to go back to his counselor (Barcase) because he needed to "start all over" with a BP-8. Id. at 4. He avers that when he did so, and reminded Barcase that she had the original BP-8 on file, she claimed the original was lost and gave him a new BP-8 form to complete. Id. Plaintiff advised her that he had his own copy of the original BP-8, but she refused to file it. Id.  Plaintiff contends that "[a]fter some back and forth with" Barcase and his Unit Manager, he was told he should never have filed the "sensitive" BP-9 in the first place and Barcase told him that it was too late to file on the issue, because he was now time-barred; when he objected, explaining the chain of events, he was told "oh, well." Id.  Accordingly, Plaintiff contends that the administrative remedy process was rendered unavailable to him because of the intentional and deliberate "trickery and machination of staff" and that he did in fact, file all "AVAILABLE REMEDYS. [sic]" Id.

Plaintiff attaches a copy of a BP-8 Informal Resolution form, dated August 4, 2016, in which he complained about C.O. Handlin telling him that as a sex offender, he could never get a job in the prison laundry as long as she worked there [ECF No. 88-2 at 5] a copy of a BP-9, making the same claim, dated October 21, 2016; at the top, it is marked "Sensitive," but then word is then crossed out and next to it is written "not sensitive" [ECF No. 88-2 at 6]; it is marked "received" on October 25, 2016 by the Warden, and marked "received" by the BOP's Mid-Atlantic Regional Office ("MARO") Regional Counsel on December 2, 2016 [id.]; a copy of an October 25, 2016 Rejection Notice for Remedy ID# 880419-F1 from the FCI Hazelton Administrative Remedy Coordinator, stating that "for the reasons

listed below, this administrative remedy request is being rejected and returned to you.  You should include a copy of this notice with any future correspondence regarding the rejection" [ECF No. 88-2 at 7] and that Remedy ID# 880419-F1 regarding "discrimination" was rejected because it was marked sensitive, and that if "you feel the issue is sensitive file directly to the region. No specific relief requested." Id. Plaintiff also attaches a Rejection Notice from the Mid Atlantic Regional Office Administrative Remedy Coordinator for Remedy ID# 880419-R1, dated December 2, 2016, stating that Plaintiff's grievance regarding discrimination "is not sensitive. However, we retained your request appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures." [ECF No. 88-2 at 8]; a copy of a BP-8, Request for Administrative Remedy Informal Resolution Form – General Population, where the box for "Trust Fund, Laundry" is marked with an "x;" it has a tracking number of L07-00115 and an event date of "8/4/16 ??? Summer 2016." [ECF No. 88-2 at 9]; a copy of a string of emails between Plaintiff and Barcase, where on April 1, 2017, Plaintiff emailed Barcase, subject: "Inmate Work Assignment: compound," stating "[c]an I please get two BP 8's.  I don't want time to run out, thank you . . . ." [ECF No. 88-2 at 10]; Barcase responded on April 3, 2017, saying "[p]lease see me tomorrow during Open House." [Id.]; on April 25, 2017, Plaintiff replied "I need Bp 8 please . . . ." Id.

Plaintiff also attaches a copy of an April 28, 2017 email to "Mrs. Domas," subject: Inmate Work Assignment: compound, stating "[t]he other day you told me to get a Bp 8 from Mrs. Barcase, and I asked for one yesterday, and she told me she needs to talk to you first. I don't understand, I thought I was entitled to the proper forms to exhaust all of my remedies" [id. at 11]; a copy of a May 4, 2017 email to "Mr. Dunn," subject: Inmate Work Assignment: compound, wherein Plaintiff stated "[c]an you please let me know when you received that BP9, about the laundry incident please. I just want to make

sure you get it, because once you receive it you will see how much I had to go through to get it there, and how long its [sic] took . . . thank you." Id. at 12.

Plaintiff also attaches copies of five identically-worded sworn "Affidavit of Facts," each one appearing to be signed by a different inmate, in which the inmate(s) attest to the difficulties, obstacles, and allege actual danger from retaliation that FCI Hazelton staff pose to prisoners who try to file grievances. See ECF Nos. 88-2 at 15 – 19; he also attaches a copy of the same identically-worded affidavit, signed by him. See also ECF No. 88-4 at 2. Finally, Plaintiff also attaches a copy of his own sworn affidavit, reiterating his claim that C.O. Handlin did tell him that because he was a sex offender, he could never get a job in FCI Hazelton's laundry while she was there; in it, he notes that C.O. Handlin never produced a sworn affidavit of her own, contesting the claim. ECF No. 88-3 at 1.

In reply, the Defendants merely reiterate their position that Plaintiff's claim against Handlin for denying him the job in the laundry based on his status as a sex offender should dismissed because he failed to exhaust the claim. ECF No. 89 at 1. They argue that the two documents Plaintiff attached to his response do not support Plaintiff's contention that he exhausted this claim, because the first document (ECF No. 88-2 at 434) is an informal remedy request that Plaintiff admits was not filed [id. at 2] and the second, (ECF No. 88-2 at 435) is a copy of administrative remedy # 880419-R1, which was rejected because it was "not sensitive" and should have been submitted at the institution level." Id. They make no mention of Plaintiff's "chain of events" recitation regarding his difficulties in re-filing, or his claim that Barcase refused to refile a new BP-8 because it was finally time-barred.

Here, the Administrative Remedy Generalized Retrieval summary attached to the Howard Williams sworn declaration supports the Defendants' claim that from August 8, 2016 through February 27, 2019, Plaintiff filed 21 administrative remedies; those grievances variously allege "staff misconduct," "discrimination," "job application from 8-4-2016;" "ion complaint;" and "staff complaint." See ECF

No. 59-1 at 6 – 7. It is apparent that Plaintiff did attempt to file two grievances over "discrimination," i.e., the subject of his initial grievance over Handlin's denial of his laundry job: Remedy ID# 880419-F1 and 880419-R1. See ECF No. 59-1 at 6. However, there are also two additional grievances, Remedy ID# 900568-F1, dated May 3, 2017, subject "Job Application from 8-4-2016," and Remedy ID# 900568-R1, dated July 19, 2017 (same subject), which appear to be related to the same issue – the denial of the laundry job; both were also listed as rejected. Id. Plaintiff's response in opposition, while he describes his efforts in attempting to obtain new BP-8s in April 2017, never specifically mentions that he ever filed these, nor does he explain why, after Remedy ID# 880419-F1 and 880419-R1 were rejected, he then filed Remedy ID# 900568-F1 on May 3, 2017 (subject "Job Application from 8-4-2016"), it was rejected, or why Remedy ID# 900568-R1, filed on July 19, 2017 at the Regional Office level over the same issue, was also rejected.

Here, Plaintiff has attached an affidavit detailing his trials and tribulations during the "chain of events" in filing administrative remedies at FCI Hazelton over this claim. ECF No. 88-2 at 2 – 4. As noted *supra*, he also attaches five identically-worded affidavits from other inmates, along with one of his own, all of which allege that it is "common knowledge" that it is "dangerous to even ask" for an administrative remedy, for fear of staff retaliation, and that staff try to "trick" inmates by letting time run out on their grievances, by playing the "time rejection" game; he also produced. See ECF No. 88-2 at 15 – 19, ECF No. 88-4 at 2.

Here, it appears that Plaintiff did originally file his "sensitive" BP-9 with the Warden on October 21, 2016 (Remedy ID# 880419-R1), given that its rejection notice is stamped as received by the Warden on October 25, 2016 [see ECF No. 88-2 at 6] and its rejection notice was issued by the Administrative Remedy Coordinator at FCI Hazelton, detailing the reasons therefor. See ECF No. 88-2 at 7. Therefore, Plaintiff's claim that he was merely following counselor Barcase's specific instruction

when he initially filed his "sensitive" BP-9 (Remedy ID# 880419-F1, alleging discrimination over the denial of a laundry job) on October 21, 2016 *with the Warden* appears unlikely. As previously noted, per 28 C.F.R. § 542.14(d)(1), a "sensitive" Request must explain, in writing, the reason for not submitting the Request at the institution; and this bypasses the informal resolution and institutional levels, and is not filed with the warden, *rather, with the Regional Administrative Remedy Coordinator*, who determines whether the request actually qualifies as "sensitive." If it does not, the complaint will be rejected and returned to the inmate with instructions to file at the institutional level.  The undersigned finds it unlikely that counselor Barcase would instruct Plaintiff to file a sensitive remedy request at the facility level, i.e., with the *warden*, given that such an instruction would directly contradict what 28 C.F.R. § 542.14(d)(1) directs as the proper procedure for a "sensitive" request. Moreover, any such directive by Barcase would also be completely contradicted by the very clear directive, set forth in plain English on the back of the last page of the 4-page BP-9 form:

> **Requirement for submission of this request direction to the Regional Director, Bureau of Prisons**.
>
> **When the inmate believes that he may be adversely affected by the submission of his request at the institution level because of the sensitive nature of the complaint, he may address his complaint to the Regional Director**.  He must clearly indicate a valid reason for not initially brining his complaint to the attention of the institution staff.
>
> If the inmate does not provide a reason, or **if the Regional Director or his designee believes that the reason supplied is not adequate, the inmate will be notified that the complaint has not been accepted**.  The form sent to the Regional Director will not be returned.  **However, the inmate may prepare a new request and submit it at the institution if he wishes**.

BOP BP-9 form (emphasis added).  Further, such a directive by Barcase would contradict the detailed instructions regarding the filing of "sensitive" administrative remedies contained in the USP Hazelton men's handbook, a copy of which is given to each prisoner on admission:

> **Sensitive Complaints**

> If an inmate believes a complaint is of such a sensitive nature that he would be adversely affected if the complaint became known to the institution, **he may file the complaint directly to the Regional Director.** The inmate must explain, in writing, the reason for not filing the complaint with the institution. **If the Regional Director agrees that the complaint is sensitive, it will be accepted and a response to the complaint will be processed. If the Regional Director does not agree that the complaint is sensitive, the inmate will be advised in writing of that determination. The inmate may then pursue the matter by filing a BP-229[10] at the institution**.

USP Men's Handbook at 41. Moreover, Plaintiff's allegation that on October 25, 2016, when the "sensitive" BP-9 was rejected by the Warden, Barcase told him to file it "in the Region [sic]as a BP-10" also appears less than credible. A BP-10 is an entirely different form than a BP-9 and it is unlikely that a BOP counselor would instruct him to use it, when it completely contradicts the directive of 542.14(d)(1), which clearly says no such thing; a "sensitive" BP-9 is to be filed first with the regional director; if the regional director determines that it is not, in fact, sensitive, then a new form should be obtained and it should then be filed as an ordinary administrative remedy with the warden. It does *not* say that a prisoner is free to abandon the effort to file a BP-9 with the warden and merely proceed to the Regional level by filing on a BP-10. Plaintiff's allegation that after Remedy ID# 880419-R1 was rejected, Barcase also told him that that it was too late to file on the issue anyway, because he was now time-barred likewise lacks credibility, given that 28 C.F.R. § 542.14(d)(1) specifically states that if a grievance is not deemed sensitive, the Warden shall allow a reasonable extension of time for such a resubmission.

In this case, despite Plaintiff's arguments that he exhausted all of the administrative remedies *that were available* to him, it is apparent from a thorough review of the record that Plaintiff nonetheless implicitly admits that he did not *fully* exhaust his grievances before filing suit, because he admits that the grievances regarding the denial of the laundry job were *rejected*, not denied. Further, Plaintiff's responses conspicuously fail to address the fact that his grievances were rejected because he never

---

[10] A BP-229 form is a BP-9; a BP-230 form is a BP-10; and a BP-231 form is a BP-11.

complied with the instructions provided in the responses, despite being repeatedly instructed to do so, not only in the responses, but also in the very clear directions provided by the Hazelton Inmate Handbook, and on the back of the BP-9 form itself.  The rejection notices for each of Plaintiff's remedies advised that the grievances were being rejected and gave specific directions as to how to correct the issue. Plaintiff simply did not follow the directions.

Further, to the extent that Plaintiff is impliedly alleging that he feared retaliation from FCI Hazelton staff if he continued to attempt to use the administrative remedy process, thereby entitling him to be relieved of the obligation to exhaust his this claim, the undersigned finds that he has presented no claim that is substantial and serious enough that would deter a similarly situated prisoner of ordinary fitness from pursuing administrative  remedies. Rather, it appears that the Plaintiff merely makes a conclusory statement without substantive facts, a statement that is belied by the fact that Plaintiff did in fact later obtain a new BP-8 (Remedy ID# 900568-F1) and filed it at the facility and later at the Regional level (as Remedy ID# 900568-R1) over the "job application from 8-4-16" claim, but for whatever reason, appeared to abandon the effort, because it is apparent that he never filed an appeal to the central office after both of those (Remedy ID# 900568-F1 and Remedy ID# 900568-R1) were rejected. It is likewise apparent from his Administrative Remedy Generalized Retrieval summary that he continued to file numerous other grievances over other issues, continuing at least a year and a half past the date of those rejections [see ECF No. 59-1 at 6 – 7] , suggesting that he was not so intimidated by FCI Hazelton staff's allegedly retaliatory behavior that he actually feared for his safety.

Despite the fact that Plaintiff has filed a verified amended complaint and has produced a sworn affidavit attesting to his efforts to exhaust this claim, while the Defendants have not included any affidavits on the subject, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment. See Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686, 694 (2007).

Accordingly, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust cannot be excused, and this claim must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now do so under the BOP's administrative remedy procedure;[11] therefore, this claim should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq.*

## C. Claims Not Cognizable in a Bivens Action

In 42 U.S.C. § 1983, Congress provided a specific damages remedy for Plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government. In 1971, the Supreme Court recognized in Bivens an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. 388, 397(1971). The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." Id. At 396. The Court noted, however, that Congress had not foreclosed a damages remedy in "explicit" terms and no "specific factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. Id. At 396-97. Accordingly, the Court held that it could authorize a remedy under general principles of federal jurisdiction. See id. At 392.

---

[11] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

Over the next nine years, the Court allowed <u>Bivens</u>-type remedies twice more, in a Fifth Amendment gender discrimination case, <u>Davis v. Passerman</u>, 442 U.S. 228 (1979) (an administrative assistant sued a Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishments clause case, <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma).

For nearly four decades, the Supreme Court has "consistently refused to extend <u>Bivens</u> to **any new context** or new category of defendants." <u>Ziglar v. Abbasi</u>, 127 S.Ct. 1843, 1857 (2017). (citations omitted) (emphasis added). Moreover, in <u>Abbasi</u>, the Supreme Court reiterated the significant limits to <u>Bivens</u> liability, cautioning courts to first consider whether to imply a remedy at all before reaching the merits of such claims. 137 S.Ct. 1843 (2017). The court left no doubt that expanding the personal liability associated with <u>Bivens</u> is "a 'disfavored' judicial activity." <u>Id.</u> at 1857 (citations omitted). The Court specifically noted that "in light of the changes" to its "general approach" to "implied damages remedies," the analysis in <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> might be "different if they were decided today." <u>Id.</u> at 1856. <u>See</u> <u>also</u> <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 67 & n.3 (2001) (noting that <u>Bivens</u> relied "largely on earlier decisions implying private damages actions into federal statutes" from which the Supreme Court has since "retreated.").

As this Court recently noted, <u>Abbasi</u> "marked a substantial shift in how courts are to interpret allegedly unconstitutional acts by federal actors when there is no statute permitting a damages remedy." <u>Holloway v. Coakley, et al.</u>, Case No. 2:17-CV-74, Order Dismissing Case, ECF No. 73 (N.D.W. Va. Apr. 8, 2019). Specifically, <u>Abbasi</u> "narrowed the circumstances in which a plaintiff may successfully state a claim under principles established in <u>Bivens</u>." <u>Atkinson v. Holder</u>, No. 18-1677, 2019 WL 1292886, at *11 (4th Cir. Mar. 21, 2019) (citing <u>Abbasi,</u> 137 S.Ct. at 1857-58).

After <u>Abbasi</u>, there is now a two-step test when deciding whether a cognizable <u>Bivens</u> remedy exists for alleged official misconduct. First, a court must determine whether the claim presents a "new" <u>Bivens</u> context. <u>Id.</u> at 1859. If it does, the court must assess whether any "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." <u>Id.</u> at 1857, 1859. Therefore, if the <u>Bivens</u> claim meaningfully differs from "a claim against an FBI agent for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; [or] a claim against prison officials for failure to treat an inmate's asthma," it is a new context. <u>Id.</u> at 1860.

In considering whether any special factors counsel hesitation in authorizing a damages remedy, this inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1858. When asserting an implied cause of action under the Constitution, such as a <u>Bivens</u>, a separation-of-powers analysis is central to the inquiry. <u>See id.</u> at 1857. The question becomes who should decide whether to provide a damages remedy—Congress or the Court. <u>Id.</u> "The answer most often will be Congress [<u>id.</u>]," because it "is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims." <u>Id.</u> at 1858. Moreover, the <u>Abbasi</u> decision instructs the lower courts that if claimants have alternative remedial structures, "that alone may limit the power of the Judiciary to infer a new <u>Bivens</u> 'cause of action.' In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] . . . the courts must refrain from creating the remedy in order to respect the role of Congress." <u>Id.</u>

**1) "CHO-MO" Label**

Plaintiff contends that on July 16, 2016, after he was sent to the SHU, other inmates told him that CO Thayer returned to his cell and loudly announced to inmates nearby that Plaintiff was a "CHO-MO." ECF No. 26-1 at 1 – 2.  Plaintiff avers that being outed as a sex offender puts him at risk of assault and robbery from the inmate population [id. at 5]; he contends that it is "because of . . . [Thayer's] action that . . . [he] has suffered an injury." Id. Plaintiff's amended complaint does not specifically identify what injury he suffered, beyond "physical and psychological injuries." ECF No. 26 at 9.

Defendants argue that Plaintiff's claim against C.O. Thayer for calling him "CHO-MO" fails to state a cognizable Bivens claim, because verbal abuse and name-calling do not rise to the level of constitutional violations. ECF No. 59 at 10. Moreover, they argue that Plaintiff has not sufficiently pled that Thayer was personally involved in denying him a federal right; that her alleged behavior caused him actionable damages; or that she acted with the requisite "deliberate indifference" necessary to support a claim for an Eighth Amendment violation. Id. at 10 - 11. Further, they note that Plaintiff's claim for unspecified physical and emotional injuries is so vague that it does not rise to the level required for a cognizable Bivens claim, which must be more than de minimis. Id. at 12.

In response, Plaintiff insists that all of his claims, including this one, state Eighth Amendment violations. ECF No. 88 at 13, 16, 18. He notes that in contrast to the affidavits in support of his claim that he has attached, C.O. Thayer has not produced an affidavit of her own, denying the claim. Id. at 17. He argues that Thayer's actions in outing him as a sex offender to the inmate population constitute deliberate indifference, were intended to harm him and "did in fact do just that." Id.  Plaintiff attaches identically-worded affidavits from five inmates, as well as an identically-worded one of his own, attesting generally that it is "common knowledge" that FCI Hazelton staff know that if they identify an inmate convicted as a sex offender to the general population, that will expose the sex offender inmate

to danger from other inmates, and the staff will allow other inmates to abuse sex offender inmates "in any way they wish to do so and will do nothing to protect" them; the abuse includes being told that "'YOU' can't work in their department as long as they are there because you're a 'SO' or more specifically[,] they say "Cho-Mo' (short for Child Molester.)." Id.[12]

In reply, Defendants note that Plaintiff's response incorrectly argues _inter alia_, that this claim against C.O. Thayer should not be dismissed because it states an Eighth Amendment violation; Defendants reiterate their argument that this claim is not cognizable in Bivens because mere verbal abuse and name calling do not violate the Eighth Amendment. ECF No. 89 at 2.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citation omitted). A prisoner who alleges deliberate indifference under the Eighth Amendment arising from failure to protect must satisfy two requirements, an objective component and a subjective component. "First, the deprivation alleged must be, objectively, sufficiently serious," (objective component) and second, "the prison official must have a sufficiently culpable state of mind: (subjective component). Id. at 834 (quotation marks and citation omitted). To satisfy the objective component, a prisoner must establish an "extreme deprivation," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), which requires the prisoner to "allege a serious or significant physical or emotional injury resulting from the challenged conditions **or demonstrate a substantial risk of** such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom v. S. Carolina Dept. Of Corrections, 349 F.3d 765, 770 (4th Cir. 2003) (emphasis added). To establish the subjective component, a prisoner must show that the prison official acted with "deliberate indifference," which entails "something more than mere

---

[12] See affidavits from inmates Christopher Blain [ECF No. 88-8 at 2]; David William Barrch [id. at 3]; Paul Lewis Axelson [id. at 4]; Stephen Paul Kezerle [id. at 5]; and Michael P. Johnson [id. at 6]; as well the identically-worded one provided by Plaintiff. ECF No. 88-9 at 2.

negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 834-35. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or **risk of harm**." <u>De'Lanta</u>, 330 F.3d at 634 (emphasis added).

Here, the undersigned disagrees with Defendants as to whether this claim states a constitutional claim. Being labeled a child molester by a guard is sufficient to meet the objective component of the deliberate indifference standard even though an inmate has not yet been injured as a result of the label. <u>Brown v. Narvais</u>, 265 Fed. App'x 734, 735-36 (10th Cir. 2008). Nonetheless, the <u>Narvais</u> court carefully narrowed the import of its holding by stating the following:

> Of course, plaintiff may be unable to substantiate his allegations, or defendant may be able to show additional circumstances that negate or neutralize the danger created by the disclosure. In either case, defendant could successfully defend against the suit on summary judgment. Again, consistent with <u>Benefield</u>, we simply hold that this action was not subject to dismissal at the pleading stage.

<u>Id.</u> at 736.

Prisoners elsewhere have recovered for being outed by guards as child sexual offenders under an Eighth Amendment analysis. In <u>Lonewolf v. Garrett</u>, 2019 U.S. Dist. LEXIS 77290 (W.D. Va. May 7, 2019), the prisoner plaintiff alleged that a guard revealed that he was a child sex offender in the presence of two other inmates.  Shortly thereafter, Lonewolf was brutally  beaten by one of those inmates, who accused him of being a child sex offender, sustaining multiple serious permanent physical and mental injuries. At the summary judgment stage, the parties presented very different factual stories about the circumstances leading up to the assault, and the defendant's summary judgment motion was denied.  Ultimately, the case was mediated and settled.[13]

---

[13] <u>See</u> <u>Lonewolf v. Garrett</u>, Case No. 5:18cv4 (W.D. Va. 2019), available on PACER.

Likewise, in a Sixth Circuit Court of Appeals case, a district court's denial of summary judgment to correctional officer was affirmed, because the record established deliberate indifference where a guard disclosed to other inmates the prisoner plaintiff's pending criminal charge for allegedly raping a nine-year old girl, and then did nothing to protect the detainee from a substantial risk of harm – a beating by other inmates. See Leary v. Livingston County, 528 F.3d 438 (6th Cir. 2008).

However, in Danser v. Stansberry,[14] the Fourth Circuit reversed a district court's order finding a dispute of material facts and denying qualified immunity in a similar failure to protect case, where the prisoner plaintiff, a convicted sex offender, was placed in an outside recreation cage with three other inmates, one of whom was a gang member Danser had never met and had no "keep-away" orders in place on. The guard was unaware of Danser's sex offender status and the other inmate's gang member status. Instead of supervising the recreation cage as required, the guard left his post and Danser was attacked by the gang member, who beat him severely while commenting on Danser's sex offender status. The Fourth Circuit found that the record failed to show as a matter of law that the guard knew and disregarded an excessive risk to Danser's health or safety by leaving him, unsupervised, with the inmate who attacked him.

Cases where guards have outed prisoners for being a snitch have a similar analysis. The Fourth Circuit has observed, "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch,'" Miller v. Leathers, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990)); see also Odom v. S.C. Dep't of Corr., *supra* at 349 F.3d 765, another Fourth Circuit case, where the defendant officers ignored Odom's voiced fears of particular inmates; observed those inmates threaten Odom; attempt to break into his cell; and goad others to attack him but did nothing; other staff advised the officers to move Odom to safety but the officers permitted the inmates to attack Odom, saying he got what he deserved

---

[14] Danser v. Stansberry, 772 F.3d 340 (4th Cir. 2014).

for being a snitch; the Fourth Circuit found that Odom stated a deliberate indifference claim. A review of analogous cases reveals that an inmate states a cognizable claim under the Eighth Amendment when he alleges or shows that a prison official has identified him as a snitch to other prisoners. See, e.g., Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008); Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989); Harm v. Berry, 728 F.2d 1407, 15409 (11th Cir. 1984); White v. Fox, 470 Fed. Appx. 214, 220 (5th Cir. 2012) (unpublished). Numerous courts have allowed plaintiffs to survive summary judgment where the plaintiff alleges only an increased risk of attack or serious psychological or emotional injury from such risk. See, e.g., Benefield, 241 F.3d at 1271-72 (rejecting the government's argument that a prisoner's claim was subject to dismissal in the absence of physical injury); Williams v. Thomas, 2013 WL 1795578, at *6 (E.D. Pa. Apr. 29, 2013) ("district courts in this Third Circuit have found that the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm").

More generally, both the Supreme Court and the Fourth Circuit have indicated that a prisoner can bring an Eighth Amendment claim to challenge harm that is certain or very likely in the future, even if the harm has not yet materialized. See Helling v. McKinney, 509 U.S. 25, 33 (1933) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition . . . It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); Woodhous v. Com. of Va., 487 F.2d 889, 890 (4th Cir. 1973) (per curiam) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief.").

Therefore, the undersigned concludes that a plaintiff may survive summary judgment by presenting evidence that he was exposed as a sex offender convicted of molesting children, and was

attacked, without having to conclusively prove that the exposure caused the attack. Likewise, a plaintiff could be entitled to injunctive relief to prevent an assault based upon being labeled a CHO-MO. However, in the instant case, even though Plaintiff's claims that Defendant Thayer called him  a "CHO-MO" remain uncontradicted at the summary judgment level, the Plaintiff has not alleged that he was physically assaulted as a result.

The undersigned finds that the five identically-worded affidavits provided by inmates Blain Barrch, Axelson, Kezerle, and Johnson [see ECF No. 88-8 at 2 – 6]; as well the identically-worded one provided by Plaintiff [ECF No. 88-9 at 2] provide no support to Plaintiff's "Cho-Mo" claim, because none of the five inmates actually aver that they personally witnessed or heard Thayer call Plaintiff a "CHO-MO;" instead, the affidavits all merely discuss generally how FCI Hazelton staff hypothetically or typically treat inmates convicted of sex offenses. While it is true that Plaintiff's verified amended complaint declared under penalty of perjury that the information contained therein was true and accurate [ECF No. 26 at 10], thus making its allegations "the equivalent of an opposing affidavit for summary judgment purposes[,]"[15] here, the undersigned cannot overlook the fact that Plaintiff also admits that he *was not actually present* when Thayer made the "CHO-MO" statement, because he had already been removed from his cell and placed in the SHU.

Under Federal Rule of Civil Procedure 56(e)(1), an affidavit supporting summary judgment "must be made on personal knowledge, set forth such facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." specific facts are insufficient." Casey v. Lewis, 4 F.3d 1516, 1527 (9th Cir. 1993). If his testimony "relied on information from (unsworn) departmental . . . officers, and the source of these officers' information is unclear," then it potentially

---

[15] World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 516 (4th Cir. 2015) (internal quotation marks omitted).

relied on inadmissible hearsay evidence. <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 419 (9th Cir. 2001). Accordingly, here, although the five identical affidavits provided by the five inmates and Plaintiff himself do not support this claim, nevertheless, two affidavits from inmates, attached to Plaintiff's original complaint but not to his amended complaint, ostensibly regarding the property loss/theft issue, do provide support to this claim; they state in pertinent part:

> I Stephen Kezerle #03591-424 on July 30, 2016; do here state the facts as best as I recall them for the incident taken place on July 16 2016. This incident occured [sic] on unit L4 after inmate Keith Arrick #72363-061 left the housing unit.
>
> Staff member J. Kimble [sic] went to cell 320 in Unit L4 with inmate Arrick's cell mate still in the cell and left this cell mate in cell 320 with inmate Arrick's unsecured property. **Staff member J. Kimble [sic] told other inmates on her way to the office that inmate Arrick was a "Cho-Mo"** and had offered her candy. . . .
>
> **Some of these inmates  . . . were the same inmates that staff member Kimble [sic] had told that inmate Arrick was a "Cho-Mo**[.]**"** . . .
>
> These are the facts, as best as I can recall them from what I saw,  about the staff member J. Kimble's [sic] actions and the stolen property out of cell 320 on 6-16-2016 and after.
>
> Signed: *Stephen Kezerle*

ECF No. 1-1 (emphasis added).

> I Joseph Rutherford, having U.S. Department of Justice, Federal Bureau of Prisons, Identification #29568-058, hereby make acknowledgement to the actions of J. Kimble [sic], an employee of the U.S. Department of Justice, Federal Bureau of Prisons, against Keith Arrick, #72363-061.
>
> I hereby acknowledge my memory of the events that on the day that Keith Arrick was taken from the L4 housing unit, that J. Kimble [sic] did in fact unsecure Keith Arrick's locker and leave his cell unsecure which allowed for several inmates to take possession of his personal belongings. **Also I heard J. Kimble state "He is a Cho-Mo!"**
>
> These are the facts and I hereby testify to them this 30th day of July 2016.
>
> Signed: *Joseph Rutherford*

ECF No. 1-2 (emphasis added).

Without these two affidavits, Plaintiff's allegation regarding Thayer's "CHO-MO" statement would merely be an unsupported conclusory allegation that would not create a genuine issue of material fact. However, this analysis must go beyond that. While Plaintiff's claim would satisfy the pleading standard at the motion to dismiss stage, he utterly fails to establish a substantial risk of harm necessary to meet the objective standard of the deliberate indifference test at summary judgment. From the July 16, 2016 date of Thayer's alleged Cho-Mo statement until the present—almost three and a half years— Arrick has alleged no specific physical injury.  He fails to set forth any facts whatsoever indicating that he has ever been attacked by another prisoner or placed in physical danger as a result of this disclosure of his sex offender status. He does somewhat obliquely generally allege having developed Post-Traumatic Stress Disorder ("PTSD"), but implies that it was a result of *C.O. Knotts' actions* in denying him visitors (to cause him harm by inflicting "Cho-Mo justice") [ECF No. 88 at 18], not because of *Thayer's* actions. However, the Prison Litigation Reform Act (PLRA) of 1996, places an important limitation upon all actions arising from incarceration, requiring proof of "physical injury" arising from the allegedly unconstitutional condition. Under 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Here, the Plaintiff is seeking monetary damages. However, he has failed to allege that he suffered from any physical injuries as the result of the events he describes in his complaint.  Therefore, Arrick has failed to support his allegations under this claim as to defendant Thayer and summary judgment on this claim should be granted.

**2) Property Loss Claim**

Plaintiff claims that on July 16, 2016, while he was in the SHU, CO Thayer knowingly left his cell unsecured, deliberately inviting other inmates in to steal his personal property. ECF No. 26-1 at 1 – 2.  Plaintiff contends that Thayer later returned and witnessed "five to six inmates" exiting his cell with his personal property; all of his personal property was taken. ECF No. 26-1 at 1 – 3. Thayer then entered Plaintiff's cell with two inmates, and those inmates left the cell with more of Plaintiff's property. Id. at 2. Plaintiff avers that several inmates have provided affidavits to support this claim, stating that they are attached as exhibits.[16] Id. at 2. Plaintiff avers that an inmate by the name of Kezerle provided an affidavit saying this, identifying the property, and stating his belief that some of Plaintiff's property was later sold on the yard. Id. at 2 – 3.  A second prisoner witness, "Rutherford," provided an affidavit stating stated that Thayer actually unsecured Plaintiff's locker, when she announced to the others that he was a "CHO-MO."[17] Id. at 3.

Defendants contend that  Plaintiff's claim that Thayer's actions caused other inmates to enter his cell and steal his belongings does not rise to the level of a Bivens claim, because unauthorized intentional deprivation of property does not rise to the level of a constitutional violation as long as adequate grievance procedures are available, as was the case here, where Plaintiff was able to fully grieve his lost property claim. ECF No. 59 at 11. Further, Plaintiff has not stated a sufficient causal connection between Thayer's alleged behavior and the independent actions of other unknown inmates who allegedly stole Plaintiff's things, nor has Plaintiff alleged that Thayer knew of any specific danger to Plaintiff or knew that other inmates would steal his property. Id. at 11 – 12.

---

[16] Plaintiff failed to attach the same to his amended complaint; however, Plaintiff did attach the it to his original complaint. Affording Plaintiff, a pro se filer, liberal construction of his pleadings, the affidavit will be considered. See ECF No. 1-1.

[17] This affidavit was also not attached to the amended complaint. Because the pro se Plaintiff attached it to his original complaint, he will be afforded leniency in liberal construction of his pleadings, and the affidavit will be considered. See ECF No. 1-2.

Plaintiff's response in opposition argues generally that all of his claims state Eighth Amendment violations [ECF No. 88 at 13, 16], but does not specifically address this claim.

In reply, Defendants note that Plaintiff's response incorrectly argues that, *inter alia*, his claim against C.O. Thayer should not be dismissed because it states an Eighth Amendment violation; Defendants reiterate their argument that this claim is not cognizable in <u>Bivens</u> because it does not form the basis for a cognizable Eight Amendment violation, because property loss claims do not violate the Eighth Amendment. ECF No. 89 at 2. Further, they argue, even if this claim were to be considered in the <u>Bivens</u> context, it would be precluded by the Supreme Court's holding in <u>Ziglar v. Abassi</u>, 137 S.Ct. at 1857, 1859. <u>Id.</u> at 3.

The Court is required to review all the evidence "in the light most favorable to the nonmoving party, and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Viewing Plaintiff's amended complaint liberally, Plaintiff appears to contend that Defendants violated his Fifth Amendment rights by losing or failing to secure his personal property. Courts deem inmates' claims respecting prison officials' intentional deprivation of their property cognizable under <u>Bivens</u> to the extent that due process rights are implicated. Although Defendants may have failed to prevent the loss of Plaintiff's personal property in the instant case, the undersigned finds that the circumstances do not implicate a violation of Plaintiff's constitutional rights. The record reveals that Plaintiff had meaningful post-deprivation remedies through the BOP's Administrative Remedies Program and he availed himself to them. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984)(regardless of whether a government employee intentionally or negligently deprived an inmate of his or her property, the deprivation does not violate the due process clause as long as the inmate has adequate post-deprivation remedies); <u>Manning v. Booth</u>, 2005 U.S. Dist. LEXIS 48872, 2005 WL 1200122, *2 (D. Md. 2005) ("In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an

adequate post-deprivation remedy."); Bigbee v. United States, 359 F.Supp.2d 806 (W.D. Wis. 2005); cf. Laury v. Greenfield, 87 F.Supp.2d. 1210, 1214 – 1215 (D. Kan. 2000), quoting Burton-Bey v. United States, 100 F.3d 967, 1997 WL 654457 (10th Cir. Kan.)(Defendants' negligent or intentional deprivation of plaintiff's property does not violate due process if there is a meaningful post-deprivation remedy for the loss.) Accordingly, Plaintiff's due process claim must be dismissed.

**3) Denial of Visitor**

Plaintiff also alleges that on an unspecified date, one of his visitors was denied entry by staff, because BOP Program Statement ("P.S.") 5267.09 [sic][18] states that an inmate must have known the proposed visitor prior to incarceration. ECF No. 26-1 at 6. Plaintiff contends that this provision is "cruel and unusual punishment" and it should be stricken from the P.S. Id.

Defendants argue that Plaintiff's claim against C.O. Knotts for denying admittance to certain visitors likewise fails to state a cognizable Bivens claim, because prisoners have no constitutional right to visitation; further, Plaintiff admits that Knotts was merely following BOP policy by refusing admittance to visitors not previously known to Plaintiff at the time he was incarcerated, and argues that the policy itself should be considered cruel and unusual punishment. ECF No. 59 at 14 - 15. Therefore, Defendants note, Plaintiff has failed to allege any constitutional violation committed by C.O. Knotts. Id. at 15.

---

[18] BOP P.S. 5267.08(12)(c) "Visiting Regulations" states in pertinent part:

**c.   Friends and Associates.   The visiting privilege ordinarily will be extended to friends and associates having an established relationship with the inmate prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution.   Exceptions to the prior relationship rule may be made, particularly for inmates without other visitors, when it is shown that the proposed visitor is reliable and poses no threat to the security or good order of the institution.]**

**Regardless of the institution's security level**, the inmate must have known the proposed visitor(s) prior to incarceration.   The Warden must approve any exception to this requirement.
BOP P.S. 5267.08(12)(c) at 6.

Plaintiff's response in opposition states that all of his claims state Eighth Amendment violations. ECF No. 88 at 13, 16.  He now makes an entirely new claim, that Knotts "did in fact I.D. me as a "SO" and did act in his 'individual capacity' and 'official capacity' to deny my visitation to cause me harm by inflicting 'Cho-Mo'" justice." ECF No. 88 at 18.  He argues that Knott's actions were intended to be "cruel and unusual punishment," an Eighth Amendment violation. Id.

In reply, Defendants reiterate their argument that this claim is not cognizable in a Bivens action because it does not constitute an Eighth Amendment violation.  ECF No. 89 at 3. Moreover, they argue, even if this claim were to be considered as an Eighth Amendment violation, it would be precluded under Ziglar v. Abassi, because it constitutes a new Bivens context. Id.

Here, Plaintiff's new claim in his response in opposition that Knotts identified him as a sex offender to inflict "Cho-Mo justice" was not raised until after the Defendants filed their dispositive motion; therefore, the only claim that will be given review is the original claim Plaintiff raised in the amended complaint against Knotts. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312 (11th Cir. 2004) (per curiam) (A non-moving party may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.). "A plaintiff may not her complaint through argument in a brief opposing summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

Plaintiff himself admits that Knotts was merely following BOP policy by restricting his visitor on one occasion because it was not a person with whom Plaintiff was acquainted prior to incarceration. See ECF No. 26-1 at 6.  Accordingly, Plaintiff has failed to specifically allege that anything that Knotts did violated his constitutional rights, fatal to his Bivens claim. See Price v. Coakley, Case No. 3:19-CV-72, 2019 WL 2946076, *2 (N.D. W.Va. 2019)(A Bivens plaintiff must specify the acts of each defendant that violated their constitutional rights) (citing Wright v. Smith, 21 F.3d 496, 501 (2nd Cir.

1994)); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (Liability in Bivens is "personal, based upon each defendant's own constitutional violations.").

Moreover, prisoners do not have a constitutional right to visitation. Williams v. Ozmint, 716 F.3d 801, 805-808 (4th Cir. May 15, 2013). Further, any restrictions placed on visitation does not result in a constitutional violation. Id. at 806, *citing* White v. Keller, 438 F.Supp. 110, 115 (D. Md. 1977). In Overton v. Bazzetta, the Supreme Court found that certain prison regulations in Michigan, which restricted visitation rights, did not violate the Fifth, Eighth, or Fourteenth Amendments. 539 U.S. 126, 129–30 (2003). The Supreme Court further explained that "[a]n inmate does not retain rights inconsistent with proper incarceration," and "*freedom of association is among the rights least compatible with incarceration.*" Id. at 131 (emphasis added). Significantly, the Overton Supreme Court noted that restrictions on visitation do not violate freedom of association guaranteed by the First Amendment [id. at 131 - 32], nor does it rise to the level of cruel and unusual punishment forbidden by the Eighth Amendment. Id. at 136 – 37. Because Plaintiff has not pled a cognizable Bivens claim against Knotts, and there has been no constitutional right violated by the restriction on Plaintiff's visitors, Plaintiff has failed to state claim upon which relief can be granted, and because there is no genuine issue of material fact regarding this claim, it should be dismissed.

**4) Failure to Maintain Ion Spectrometry Scanner – Accardi Violation**

Plaintiff's amended complaint alleges that "unknown officers"/"staff"[19] refused entrance to one of his visitors, based on a failed "Ion Spectrometry Scan"[20] that was performed by unknown BOP

---

[19] Plaintiff's amended complaint did not identify this staff member by name, but in response to the Order to Answer that included a directive that gave Plaintiff 30 days to provide information identifying the John/Jane Doe "Unknown Correctional Officers," Plaintiff identified T. Knox.  See ECF No. 33. Further, a grievance attached to Plaintiff's response to Defendant's dispositive motion also identifies this staff member as C.O. Knotts. ECF No. 88-10 at 3.

[20] The ion spectrometry device program is a minimally intrusive method utilizing gas chromatography and mass spectrometry for screening people, their belongings, mail, and packages for the presence of illegal substances. See BOP P.S. P5520.01.

officers working visitation; he alleges that the BOP does not comply with the "extensive requirements" for routine maintenance of the Ion Spectrometry Scanner, and that this failure constitutes a violation of the <u>Accardi</u> Doctrine, exposing Defendants are liable for damages for their failure to follow policy. <u>Id.</u> at 6 – 7; <u>see also</u> ECF No. 1 at 8.

Defendants contend that Plaintiff's claim that C.O. Knotts's failure to properly maintain the Ion Spectrometry scanner to screen visitors was an <u>Accardi</u> doctrine violation fails, because an <u>Accardi</u> doctrine violation is inapplicable in a <u>Bivens</u> action.  ECF No. 59 at 15 – 16.

Plaintiff's response in opposition states that all of his claims state Eighth Amendment violations. ECF No. 88 at 13, 16.  However, he makes no specific mention of this claim, although he does attach a grievance over the issue, in which he stated that the defective ion scanner caused him to be denied a visitor "on several occasions," and that this caused him to suffer First, Fifth, and Fourteenth Amendment violations. ECF No. 88-10 at 3.

In reply, the Defendants reiterate their argument that this claim is not cognizable because it does not constitute an Eighth Amendment violation.  ECF No. 89 at 3. Moreover, they argue, even if this claim were to be considered as an Eighth Amendment violation, it would be precluded under <u>Ziglar v. Abassi</u>, because it constitutes new <u>Bivens</u> contexts. <u>Id.</u>

The <u>Accardi</u> Doctrine provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid. <u>United States ex rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 268 (1954).

Here, Plaintiff contends that his First, Fifth, and Fourteenth Amendment rights have been violated by the Defendants' failure to adhere to their own policies, i.e., proper maintenance of the Ion Spectrometry Scanner.  Plaintiff is incorrect. To the extent that the Plaintiff is attempting to allege that the defendants did not adhere to a statute or administrative regulation, the undersigned notes that a

Bivens action "must be founded upon a violation of constitutional rights," Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987), and "a failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1963, 1068 n. 4 (10th Cir. 1993); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure to follow prison's internal regulations does not amount to constitutional violation); Bates v. Helman, 175 F.3d 1019, 1999 WL 160966 * 3 (7th Cir. 1999) (violation of a program statement does not rise to the level of a constitutional violation); Ortega v. Maynard, No. 06-CV-084-HRW, 2006 WL 1877016 *2 (E.D. Ky. July 6, 2006)). Moreover, the Accardi doctrine "is inapplicable in inmates' Bivens cases against Bureau of Prisons employees." Woltz v. Carter, 5:11cv0908, 2012 U.S. Dist. LEXIS 126615, 2012 WL 3879961 (S.D. W.Va. Aug. 8, 2012). In Accardi, the Supreme Court stated that "[t]he crucial question is whether the alleged conduct . . . deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto." Accardi, 347 U.S. at 265. Accordingly, this claim does not state a genuine issue of material fact, and should be dismissed.

**5) Racially Motivated Insults**

Plaintiff alleges that on June 30, 2017, Officer Buchanan, who is white, used a racially-motivated epithet at Plaintiff,[21] when he told him "[g]et boy. Get, get, get boy." ECF No. 26-1 at 7.

Defendants contend that Plaintiff's claim against C.O. Buchanan for allegedly using a racially-charged epithet fails to state a cognizable Bivens claim because racial epithets, like other name-calling, while reprehensible, do not rise to the level of an actionable constitutional violation. ECF No. 59 at 16 – 17.

Plaintiff's response in opposition states that all of his claims state Eighth Amendment violations. ECF No. 88 at 13, 16. He objects to the Defendants' claim that he failed to plead a cognizable claim

---

[21] Plaintiff is African American.

against Buchanan for using a racially charged epithet on one occasion against him, but instead of addressing that claim, instead, he raises an entirely new claim: that the AUSA (Assistant U.S. Attorney) "fails to tell" the Court that defendant Buchanan "did in fact 'ID' the plaintiff as a 'SO' (sex offender)" and that Buchanan acted "in conjunction with his fellow staff" to harm Plaintiff after he had been outed to the inmate population as a sex offender. ECF No. 88 at 19 - 20.[22]

In reply, Defendants point out that Plaintiff's response incorrectly states that all of his claims state Eighth Amendment violations. ECF No. 89 at 2. Defendants reiterate their position that any claim against Buchanan for using a racially-charged epithet must be dismissed because the same, while abhorrent, does not rise to the level of a constitutional violation. Id. at 3.

Here, because Plaintiff's new claim that the Defendants "failed to tell" the Court that defendant Buchanan "did in fact 'ID' the plaintiff as a 'SO' (sex offender)" was not   raised until after the Defendants filed their dispositive motion, it will not be given review. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312 (11th Cir. 2004) (per curiam) (A non-moving party may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.).

The undersigned agrees with Defendants that Buchanan's alleged racially-charged statement, even if true, does not state a cognizable Bivens claim. Mere verbal harassment does not give rise to a constitutional violation. See Wagner v. Wheeler, 13 F.3d 86, 92-93 (4th Cir. 1993) (verbal abuse does

---

[22] Plaintiff contends that Buchanan "acting in conjunction with his fellow staff" to harm Plaintiff by identifying him as a sex offender, caused him to suffer PTSD. Id. Plaintiff references affidavits at Exhibit 4/4B, pages 1 – 5 and Exhibit A, in support.  However, those affidavits, all of which are identical, but are signed by different inmates, make no mention of Officer Buchanan at all, nor do they mention any racially-charged epithets; all are merely general statements by various prisoners to the effect that being "outed" as a sex offender in the BOP prison system puts a sex offender in danger from other inmates; has a negative effect on sex offenders obtaining employment in prison; and that BOP staff go out of their way to cause trouble to inmate sex offenders.  See ECF Nos. 88-8 at 2 – 6; see also ECF No. 88-9 at 2. Further, Exhibit A is merely a copy of a sworn declaration by Plaintiff, contesting the statements made in the sworn declaration by Howard Williams, the BOP Legal Assistant, regarding the grievances Plaintiff filed, copies of grievances and the responses thereto, and copies of five identically-worded affidavits, each signed by various inmates, attesting to the alleged obstacles and dangers posed to inmates who attempt to file grievances at FCI Hazelton. See ECF Nos. 88-2 at 2 -19. There is no mention of Officer Buchanan making any racial epithet at all, let alone any mention of Buchanan "outing" Plaintiff as a sex offender.

not amount to a constitutional violation); McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (officers threats to spray inmate with mace; taunts and threats are not an Eighth Amendment violation); Eury v. Angelone, No. 01-cv-257, 2001 WL 24042606, at *4 (E.D. Va. June 11, 2001) (alleged derogatory racial remarks, even if true, are not constitutional violations).   Name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997) *cert. granted and judgment vacated on other grounds*, 525 U.S. 802 (1998). Likewise, racial epithets do not implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form the basis of a §1983 claim. See Wade v. Fisk, 176 A.D.2d 1087, 1089, 575 NYS.2d 394, 396 (1991).

Accordingly, Plaintiff's claim fails to state a genuine issue of material fact and should be dismissed.

### 6) John/Jane Doe "Unknown Corrections Officers"

Plaintiff initiated this action on July 31, 2017. He filed his amended Bivens complaint on August 23, 2018. On September 16, 2018, summonses were issued for the other named defendants;[23] Plaintiff was directed to provide identifying information for the John/Jane Doe "Unknown Corrections Officers" within thirty days.  Plaintiff only timely provided the information to identify one more defendant, and has made no attempt to provide information regarding any others since.  Accordingly, service could not be effectuated on any other John/Jane Doe defendants.

---

[23] Some summonses were reissued in the corrected names of certain defendants on November 14, 2018. See ECF Nos. 38, 39.

It has been over two years and four months since Plaintiff filed his complaint. Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice as to that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, "the court must extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m); see also Bush v. City of Zeeland, 74 Fed. Appx. 581, 2003 WL 22097837 at *2 (6th Cir. 2003)(citations omitted).

Here, Plaintiff was originally notified by Order of this Court, approximately two weeks after filing his amended Bivens complaint, that he had an additional thirty days in which to identify the John/Jane Doe "Unknown Corrections Officers." Thereafter, Plaintiff identified only one John Doe Defendant: Defendant C.O. Knotts. Since that time, Plaintiff has made no further effort to identify any other John/Jane Doe defendant. Plaintiff has had more than sufficient time to provide correct information in order to effectuate service on any remaining as-yet unidentified defendant John/Jane Does in this action. Noting Plaintiff's lack of diligence in doing so, the undersigned recommends that Plaintiff's claims against any other remaining John or Jane Doe defendants who have not been identified be dismissed for failure to timely effect service.

## V. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment [ECF No. 58] be **GRANTED** and Plaintiff's Amended Bivens Complaint [ECF No. 26] be **DENIED** and **DISMISSED with prejudice**.

Further, the undersigned **RECOMMENDS** that Plaintiff's pending motion for an extension of time in which to respond to Defendants' reply [ECF No. 90] be **DENIED,** given that surreplies are not permitted under Local Rule of Prisoner Litigation Procedure 11(d).

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: December 10, 2019

_/s/ Michael John Aloi_____

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE